UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DOUGLAS REED,

        Plaintiff,

v.                                                      Case No. 3:20-cv-214-MMH-MCR

E.L. TOLEDO,

        Defendant.
_____

**ORDER**

**I.   Status**[1]

Plaintiff Douglas Reed, an inmate of the Florida penal system, is proceeding on a pro se Amended Civil Rights Complaint (Doc. 15; AC) against E.L. Toledo, a medical doctor at Union Correctional Institution (UCI), in his individual capacity.[2] Reed separately filed additional exhibits (Doc. 17), some of which are duplicative of those attached to the AC. Reed asserts that Defendant was deliberately indifferent to his serious medical needs.

Before the Court is Defendant's Motion for Summary Judgment (Doc. 60; Motion). The Court previously advised Reed of the provisions of Federal Rule

---

[1] For all documents filed in this case, the Court cites to the page numbers as assigned by the Court's Electronic Case Filing System.

[2] The Court previously dismissed all claims against Assistant Warden T. Knox and all official capacity claims against Defendant Toledo. See Orders (Docs. 20, 48).

of Civil Procedure (Rule(s)) 56 and provided him with an opportunity to file a response. See Order (Doc. 21); Summary Judgment Notice (Doc. 61). Reed filed a "Motion to Dismiss Motion for Summary Judgment" (Doc. 62) and a "Motion from Plaintiff Denying Defendant's Summary Judgment Motion Notice" (Doc. 64), which the Court construes collectively as his Response. Defendant replied (Docs. 63, 65). The Motion is ripe for review.

## II. Reed's Allegations

In the AC, Reed asserts that on March 27, 2019, Defendant Toledo was deliberately indifferent to Reed's serious medical needs. See AC at 3, 5. Reed alleges that he explained to Toledo, "in detail," his "long medical history and its needs" including that he was previously prescribed a medical back brace, and he further told Toledo that he was suffering from severe pain in his back and hips that was causing sleepless nights. Doc. 15-1 at 2. According to Reed, however, Toledo failed to examine him and stated, "'I'm not doing anything for you or giving you anything.'" Id. Reed asserts that he has an "ongoing need for pain medication" and a medical back brace due to his torn muscles and ligaments, arthritis, scoliosis, and deteriorating disc disease, but Toledo failed to provide him with any treatment. AC at 5. As relief, Reed requests $277,000. See id.

### III. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[3] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v.

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

In citing Campbell, the Court notes that it does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

    The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995)

(citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted).

## IV. Parties' Positions

Toledo argues that "Reed cannot establish that he had an objectively serious medical need with regard to his pain," "[t]here is no evidence [Dr. Toledo] refused to treat Reed" or that Toledo "disregard[ed] a risk of serious harm by more-than-negligent conduct," and "Reed cannot show his alleged injuries were caused by [Dr. Toledo]." Motion at 6, 7, 9, 14.

In support of his position, Toledo submitted Reed's medical records, which show, in pertinent part, as follows:

Before Reed arrived at UCI, he was at Martin Correctional Institution where he was issued a pass for a low/bottom bunk and a back brace for the period April 10, 2018 through April 9, 2019. See Doc. 60-1 at 4. When he arrived at UCI on March 1, 2019, Nurse Duren observed that Reed had a low bunk pass, but he did not have any assistive devices. See id. at 8-10. On March 4, 2019, Toledo reviewed Reed's Health Information Transfer/Arrival Summary form. See id. at 9. Reed submitted a sick-call request on March 14,

2019, requesting a pass renewal for a bottom bunk and back support brace. Id. at 13. In response to Reed's sick-call request, on March 27, 2019, medical examined him. Id. at 16. During the examination, Reed requested his back brace and low bunk passes be renewed, but medical concluded that Reed did not need any passes. Id. Reed's medical records also contain one page of a back pain protocol form signed by Nurse Tucker that reflects Reed was given ibuprofen, prescribed over-the-counter topical analgesic, and scheduled for an evaluation with a medical doctor for "pass renewal." Id. at 17. This form, however, is missing the first page and is undated.[4] Id.

After medical evaluated Reed on March 27, 2019, Reed wrote an informal grievance complaining about a physician "perform[ing] an incomplete quick 'look' at me" examination. Id. at 14. Reed continued:

> I tried to e[x]plain to him my needs, pains, and ongoing past remedied medical solutions. He totally ignored my medical relief that's been prior diagnos[]ed from all other institutions. He's being deliberately indifferent to my medical needs. He stated, "When here at Union C.I. you will not get a medical back supporting brace." . . . This physician disregarded my prescribed medical need totally.

Id. at 14. Reed went on to explain how multiple other physicians at different institutions and outside of the prison context have prescribed him medications

---

[4] The page submitted is designated as "Page 2 of 2." Doc. 60-1 at 17.

and a back brace. See id. at 15. K. Minta denied Reed's grievance on April 1, 2019, noting that "[i]t is the responsibility of the health care provider to determine the appropriate treatment regimen for the condition you are experiencing including consults, medications, diagnostic testing, lab work or passes." Id. at 14.

On April 9, 2019, Nurse Strong saw Reed for a periodic screening encounter, and noted that his current passes were for "Back Support, Low Bunk," but they expired on April 10, 2019. Id. at 23-24. Nurse Strong referred Reed's chart to a medical doctor for pass renewal. Id. at 25.

On April 29, 2019, K. Minta noted that Reed submitted a formal grievance complaining about not receiving adequate treatment. Id. at 31. Minta denied the grievance:

> [Inmate] seen by PCP on 3-27-19 who upon evaluation determined no passes were indicated. PCP ordered Motrin 2x day x 14 days [and] informed [inmate] to access sick call as needed. [Inmate] may not agree [with] the treatment regimen ordered by the provider [and inmate] may refuse any treatment that he does not wish to have, however this does not mean that [inmate] is being denied care.

Id. On August 2, 2019, Reed was transferred to Santa Rosa Correctional Institution. See id. at 44-45. In a Health Information Transfer/Arrival Summary, a nurse at Santa Rosa recorded that Reed needed a low bunk pass and that he had a back brace with him. Id. at 45-46.

7

In his response to Toledo's Motion, Reed argues that the Motion is without merit. He argues that Toledo was deliberately indifferent when he failed to provide Reed with pain medication and a back brace. See Doc. 62 at 2. He contends that other medical providers have recognized these medical needs for years prior to Reed encountering Toledo at UCI. Id. Reed disputes Nurse Duren's observation that he had no assistive devices when she examined him on March 1, 2019. Doc. 64 at 1. He argues that his "medical proscribed [sic] assistant device back supporting brace . . . remained with [him]." Id. He supports this argument by pointing to the medical record dated August 2, 2019, which reflects that when he transferred from UCI to Santa Rosa Correctional Institution, he had a back brace with him. Id. at 5 (referring to Doc. 60-1 at 10, 46). Reed reaffirms his contention that while he was seen on March 27, 2019, he was not examined. Id. at 1-2. Reed contends that while he was explaining his medical needs to Toledo, Toledo "stopped [him] from speaking further" and advised Reed that he was not renewing any of his passes. Id. at 2.

In further support of his arguments, Reed submitted a 2012 discharge summary from the Central New York Psychiatric Center diagnosing him with "back pain with radiating symptoms, degenerative disc disease, [and] scoliosis." Doc. 62-1 at 1. He also submitted a photo of medication bottles; prescriptions from a doctor in New York in 2013 and 2014, including one for a

back support brace; his April 2018 to April 2019 low/bottom bunk and back brace pass from Martin Correctional Institution; a 2017 document from South Bay Correctional Facility documenting Reed's agreement to take care of his back brace; a list of "medical records;" a 2016 letter from an attorney advising Reed that the attorney can no longer represent him in his claim for Supplemental Security Income due to his incarceration; an unsigned and undated letter documenting Reed's doctors and prescriptions; and a notice from the Social Security Administration advising Reed that it issued him a fully favorable decision in 2017. See Docs. 62-2 to 62-10.

## V.   Analysis[5]

"To set out a claim for deliberate indifference to medical need, [the plaintiff] must make three showings: (1) he had a serious medical need; (2) the [defendant] w[as] deliberately indifferent to that need; and (3) the [defendant's] deliberate indifference and [the plaintiff's] injury were causally related. Hinson v. Bias, 927 F.3d 1103, 1121 (11th Cir. 2019); see Nam Dang by & through Vina Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) ("To prevail on [a] § 1983 claim for inadequate medical treatment, [the plaintiff] must show (1) a serious medical need; (2) the health

---

[5] For purposes of summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. Thus, the facts described in the Court's analysis may differ from those that ultimately can be proved.

9

care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury.").

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations and citation omitted); see Patel v. Lanier Cnty. Ga., 969 F.3d 1173, 1188 (11th Cir. 2020).

A claim of deliberate indifference to a serious medical need requires "three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted); see Patel, 969 F.3d at 1188-89 & n.10 (recognizing "a tension within [Eleventh Circuit] precedent regarding the minimum standard for culpability under the deliberate-indifference standard," as some cases have used "more than gross negligence" while others have used "more than mere negligence"; finding, however, that it may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as

10

reckless won't meet the Supreme Court's standard" (citations omitted)). "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Dang, 871 F.3d at 1280 (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099-1100 (11th Cir. 2014)).

> An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe Cnty., Ala., 116 F.3d 1419, 1425 (11th Cir. 1997), overruled on other grounds by LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. See Harris v. Coweta Cnty., 21 F.3d 388, 393-94 (11th Cir. 1994) (citing Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990)).[6] Further, "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the

---

[6] "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citation omitted). However, "[i]t is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (citing Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985)); see Boone v. Gaxiola, 665 F. App'x 772, 774 (11th Cir. 2016).

> Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Dang, 871 F.3d at 1280 (some internal citations modified). "'[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. Each individual defendant must be judged separately and on the basis of what that person kn[ew].'" Id. (quoting Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008)).

As an initial matter, the Court notes that the medical record dated March 27, 2019, the date on which Reed alleges Toledo failed to properly treat him, does not show that Toledo was involved with Reed's medical care on that day. Instead, the medical note dated March 27, 2019, has two provider stamps next to it: S. Duren, LPN and M. Collins, APRN. Doc. 60-1 at 16. Nevertheless, the Court assumes, as the parties do, that Toledo was the medical provider that day.

According to the medical records, on March 27, 2019, Reed was seen by medical in response to his sick-call request, and at that time, he complained of back pain and requested his passes be renewed. Id. Reed further advised that he was in confinement in a one-man cell. Id. The medical provider, which the Court assumes was Toledo, reviewed Reed's vitals, and, among other things,

noted that Reed had no edema or deformities. Id. He provided Reed with 600mg of Motrin for two weeks but determined that Reed did not need any passes. Id. Notably, after this date, Reed used the sick-call process but not for any back-related issues, see id. at 28 (sick-call request dated April 25, 2019, regarding abdominal pain), and he was evaluated for other medical complaints while still at UCI until his August 2019 transfer to Santa Rosa, see id. at 29-30, 32-43. However, he did submit an informal grievance and a formal grievance regarding his perceived lack of medical care on March 27, 2019. See Doc. 60-1 at 14, 31.

Toledo argues that Reed's pain did not present "an objectively serious medical need." Motion at 6. The Court agrees. There is no evidence in the record to suggest that Reed's pain and related complaints required immediate attention or posed "a substantial risk of serious harm." Mann, 588 F.3d at 1307. Nevertheless, even assuming Reed had a serious medical need, the record reveals that Toledo was not deliberately indifferent to that need. After his initial consultation with Reed, Toledo determined that Reed's condition did not warrant any passes, but also prescribed Reed pain medication. See Doc. 60-1 at 16. The mere fact that Toledo appears to have disagreed with Reed's prior physicians about Reed's need for a back brace and low bunk pass does not

13

render Toledo deliberately indifferent.[7] Indeed, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Considering the record, the Court finds that Toledo has carried his burden of showing that there are no genuine issues of material fact to be determined at trial. Thus, Reed must "go beyond the pleadings, and by [his] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery, 64 F.3d at 593-94. Reed has not done so. None of Reed's statements are sworn; instead, he relies on the medical records showing that he had a back

---

[7] At the time of Toledo's evaluation of Reed, Reed was housed in a one-man confinement cell. Thus, he likely had a low bunk automatically.

brace and low bunk pass prior to and after his stay at UCI, and he argues that Toledo was deliberately indifferent for disagreeing with his other medical providers. As discussed above, however, this is insufficient to show Toledo acted with deliberate indifference to Reed's alleged serious medical needs.[8]

As such, the Court finds that Toledo is entitled to entry of summary judgment in his favor. Accordingly, it is

**ORDERED**:

1. Defendant's Motion for Summary Judgment (Doc. 60) is **GRANTED**.

2. The **Clerk** shall enter judgment in favor of Defendant and against Plaintiff, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of November, 2022.

MARCIA MORALES HOWARD
United States District Judge

---

[8] Even assuming Reed could show that Toledo was deliberately indifferent to his serious medical needs, there is no evidence in the record to show that Toledo's alleged actions or inactions during Reed's approximate five-month stay at UCI caused Reed any injury.

JAX-3 11/7
c:
Douglas Reed, #C10551
Counsel of Record